## SUPREME COURT.

In the Matter of JACOB CLAPP, a person of alleged unsound mind, &c.

The *committee* of a *lunatic* are authorized under Rule 85, (without an order of the court,) to pay the costs of the attorney who conducted the proceedings upon the inquisition an amount not exceeding $50. And it seems, this payment may be made by the committee at any time while the funds of the estate are in their hands.

After a jury has passed upon the question, and found the alleged lunatic of unsound mind, the court upon confirming the inquisition, acquires complete jurisdiction over the lunatic and his property, and the costs of all the proceedings. And it is a matter of *discretion* with the court, thereafter, whether or not to allow the inquisition to be *traversed* by the lunatic.

Where by an order of the court, an inquisition of lunacy found by a jury, is allowed to be *traversed* by the lunatic, by an issue to be framed and made up for trial at the circuit, (which by stipulation is tried before three referees,) it is the plain duty of the *committee* appointed under such inquisition, to *oppose the traverse*, and see that the issue is properly tried, and not suffered to go by default.

And where on such traverse, the alleged lunatic is found *not to be of unsound mind*, and upon the report of the referees thus made, the court make an order superseding the commission and inquisition, and directing that the property be restored to the alleged lunatic, and referring it to a referee to take and state their accounts,

*Held*, that the committee were entitled to the legal expenses incurred in the proceeding on the inquisition, and in opposing the traverse of it before the referees, including the bills of the attorneys of the committee, and a reasonable counsel fee upon the trial of the traverse, and all disbursements, &c., to be paid out of the funds of the estate in their hands.

*Monroe General Term, January,* 1861.

ON the petition of Benjamin Clapp and others, children of Jacob Clapp, a commission *de lunatico inquirendo*, issued out of this court on the 31st of March, 1859, to inquire in regard to the soundness of mind of the said Jacob, and his capactity to have the management of his own affairs.

Such commission was duly executed and returned, with an inquisition annexed finding that the said Jacob Clapp was of unsound mind, which was duly confirmed by the court, on the 25th of April afterwards, and the said Benjamin Clapp and Isaac Clapp duly appointed committee of

the person and estate of the said Jacob Clapp, who entered immediately upon the execution of said trust.

On the 16th day of May, 1859, an application was made by said Jacob Clapp, or on his behalf, to set aside such proceedings, or for leave to traverse such inquisition.

Upon this application, an issue was directed to be framed, to be tried at the Monroe circuit, whether the said Jacob Clapp was, or was not, of unsound mind, on the 12th of April, 1859.

This issue was subsequently tried before referees by stipulation, instead of being tried at the circuit; and the referees determined and reported that the said Jacob Clapp was not of unsound mind at the time mentioned.

Upon the presentation of this report to the court, an order was duly granted superseding the commission and inquisition, and directing that the property be restored to the said Jacob Clapp, and referring it to a referee to take and settle their accounts.

The parties appeared before the referee, and the committee exhibited their accounts, among others, for the legal expenses incurred in the proceeding, and in opposing the traverse of the inquisition upon the issue tried before the referees.

The referee allowed the committee the sum of $50, for the expenses of executing the original commission under rule 85; and disallowed all other charges for legal services rendered in the prosecution of such proceedings, upon the ground that no order had been made by the court for the allowance of such charges.

The committee except to the report of the referee in respect to the charges so disallowed, and the said Jacob Clapp excepts to such report, for the allowance of the said sum of $50. The committee also apply by motion for an order of the court, directing the allowance of the items for legal service so incurred and disallowed. The argument of the exceptions and of such motion is now brought on together.

W. F. Cogswell, *for committee.*
G. F. Danforth, *for Jacob Clapp.*

E. Darwin Smith, Justice. Rule 85, of this court, provides that the committee of a lunatic, idiot, or drunkard, may pay the petitioner on whose application the commission was isssued, or to his attorney, the costs and expenses of the application and of the subsequent proceedings thereon, including the appointment of the committee, and without the order of the court for the payment thereof, provided the whole amount of such costs and expenses does not exceed $50.

The payment of $50 upon the bill of the attorney who conducted these proceedings, I think, therefore, was rightfully allowed to the committee by the referee. The rule authorizes a payment for that purpose to that extent, without order; and I think the committee might properly make such payment at any time while the funds of the estate were in their hands. Upon the return of the commission of lunacy, with the inquisition annexed, finding the alleged lunatic of unsound mind, the court became invested with the control and care of the property of the alleged lunatic, and was authorized to appoint a committee to take charge thereof. The committee, after its appointment, was entrusted with such property as officers of the court; and were entitled to pay the expenses of such proceedings under said rule at any time before they had restored the property to the alleged lunatic, upon a *supersedeas* of the commission. The exception of the said Jacob Clapp, to the report of the referee, should, therefore, be disallowed.

The evidence before the referees, has not been reported as it should be, in such case, to entitle the court to pass upon these exceptions, but I disallowed the exception upon the facts conceded before me on the argument.

It was also claimed on the argument that the referee had erred in disallowing the items for expenses incurred upon

application to the court for permission to sell certain property.

These items ought to have been allowed by the referee, but I cannot determine from the papers before me, what evidence was exhibited to the referee on that subject, or what the items thus disallowed are. So far as appears from the facts before the court, the exceptions taken thereto by the committee, must all be disallowed. The committee produced no order from the court, giving them costs in the proceedings, and the referee clearly had no authority to make such allowance. If it had been proved to him that applications had been made to the court for instructions in regard to the sale or other disposition of the property, the reasonable charges upon such application, might have been allowed as a necessary and proper disbursement in and about the execution of the trust.

But no such proof was given before the referee, nor is it properly before the court upon these exceptions.

The exception of the committee to the report of the referee, must, therefore, be disallowed, and the report stand confirmed.

The more important question remains upon the application of the committee to have allowed their expenses, incurred in the prosecution of the said proceedings, including the expenses incurred on the trial of the traverse by the alleged lunatic of the said inquisition.

The first inquiry upon this branch of the application, is: Has the court any power to direct such expenses to be paid? Upon this point, I have no doubt. If the original application had been unseccessful, that is to say, if in the execution of the commission of lunacy, in the first instance it had been found that the alleged lunatic was of sound mind, then the court would have acquired no control over the property of the alleged lunatic, and could not have charged the costs of the proceeding upon his property. It would, in that

case, have had no fund under its control, from which the costs of the proceeding might be paid.

In such case, as the chancellor says *In the matter of Giles, a lunatic,* (11 *Paige,* 634,) " the petitioner must pay his own costs, if he fails to establish the lunacy." (1 *Collinson,* 461 ; 1 *Paige,* 501.)

But after a jury has passed upon the question, and found the alleged lunatic of unsound mind, the court, upon confirming the inquisition, acquires complete jurisdiction over the lunatic and his property.

It is not, in such case, a matter of right, in this state, to allow the inquisition to be traversed. (*In the matter of Tracy,* 1 *Paige,* 582 ; *Wendell's Case,* 1 *John. Ch. R.,* 600.) *In the matter of McLean,* (6 *John.,* 440,) Chancellor KENT held that it was matter of discretion whether the alleged lunatic should be allowed to traverse the inquisition, and refused it once, and afterwards on two occasions allowed an issue to be framed to try it, but not at the expense of the estate.

The next inquiry is whether the expenses of opposing the traverse, are properly chargeable upon the fund in the hands of the committee.

Before inquisition found the petitioners are regarded as prosecutors ; they are treated as parties instituting a hostile proceeding against the alleged lunatic, and if they are unsuccessful, are liable to costs, and can in no event recover costs. If the proceeding is instituted in bad faith they will be charged with the costs. (*In the matter of Arnhout,* 1 *Paige,* 501 ; 1 *Collinson,* 461 ; 1 *John. Ch.* 473.)

The order directing an issue to be made up for trial at the circuit upon the question of the soundness of mind of the said Jacob Clapp, provided that the attorney for the said Jacob Clapp in the first instance prepare the issues and submit them to the attorney of the committee, and if they could not agree as to the form, then application was to be made to the court, and if the attorney for said Clapp, omit-

ted for 20 days to prepare such issues, and serve the same on the attorney for the committee, then such order was to be discharged.

The order subsequently made, substituting a trial before three referees in the place of a trial at the circuit, directed that notice be given of the time and place for conducting such trial to said Jacob Clapp or his attorney, and to Isaac Clapp and Benjamin Clapp, the committee, or their attorney.

These provisions in these orders, seem to me to imply; if not a direction or authority to the committee, at least a recognition of the duty on their part, as such committee, to oppose the traverse of the said alleged lunatic, or see to it that the issue was properly tried, and be not suffered to go by default. My brothers, JOHNSON and STRONG, who made these two orders at special term, must both have considered it the duty of the committee to take care that the issue of traverse be properly opposed, and that the inquisition be not overruled and superseded for want of any opposition to the application of the alleged lunatic.

The court had become vested with the control of the alleged lunatic and of his property, and it was its duty to see to it that it was properly taken care of, and this proceeding designed to secure and protect it from loss through the improvidence and incapacity of the supposed lunatic, be not rendered entirely abortive.

It was therefore, I think, the duty of the committee to defend the issue and not suffer the inquisition to be superseded from sheer neglect and inattention.

I do not see who else could be expected to attend to the trial of said issue but the committee.

The original petitioners for the commission, had succeeded in vesting the care and custody of the alleged lunatic and of his property in this court, and I do not see that they had any further duty to perform in the matter ; certainly they were not obliged, at their own risk and expense, to prosecute the same any further.

The implication, I think, of rule 85, is that the proper costs and expenses of the application, and of the subsequent proceedings thereon, be a charge upon the funds in the hands of the committee, for it provides, that when such costs and expenses exceed $50, the committee shall not be at liberty to pay the same out of the estate in his hands without a special order of the court directing such payment.

The committee were trustees entitled and bound to protect the fund, and, I think, would have been guilty of gross neglect if they had not opposed this application of the alleged lunatic to traverse said inquisition, and the same had been superseded in consequence of such neglect. In the case of *Van Cott*, (1 *Paige*, 489,) the chancellor says, "In no case of an unsuccessful traverse, can the solicitor of the traverse have an allowance out of the estate. The committee's expenses must be first paid, and they will absorb the whole amount allowed by law."

The statute then allowed the estate to be charged with only the sum of $25, in case of a traverse. (*Sess. Laws of* 1821, *ch.* 99, § 1, *p.* 99.) Here the chancellor assumes that the committee were to be paid their expenses on such traverse, as a matter of course, treating them as the actors upon the trial in opposition to the traverse.

In ·the case *exparte Waggs and exparte Ferne*, 5 *Vesey;* a commission was issued on the application of the Waggs', to enquire into the lunacy of Ann Goodwin, otherwise Ferne, and an inquisition taken, finding her a lunatic. The petitioners applied for a confirmation and a committee, and other relatives by the name of Ferne, presented a counter petition for a new commission, or for leave to traverse the inquisition. Leave to traverse was given, which was tried, and the jury found the said Ann Goodwin not a lunatic. Application was then made for costs by the petitioners, the Waggs', but the chancellor held that he could not give them costs, because there was no fund in court, the inquisition never having been confirmed, and no committee having been

appointed, but said, "If I could act *curiæ imperio*, it is a very proper case, and the parties have entitled themselves to all the costs I can give them, but I have no jurisdiction."

This case in principle asserts the right of the court in its discretion to give costs to the original applicants for the commission, including the expense of the traverse, where there is a fund in court from which the same can be paid.

And in *Sherwood* agt. *Sanderson*, and *Sherwood* and *Marques, exparte*, (19 *Vesey*, 280,) a commission had issued under which Kitty Sherwood was found a lunatic. Leave was given to traverse the inquisition, and the lord chancellor ordered the payment " to all parties of their costs, charges, and expenses of suing out and executing the commission of lunacy, and also of the traverse, and of all proceedings had in the matter." This case shows that the costs of the parties prosecuting the commission and traverse in these cases, are in the discretion of the court, when there is any fund out of which they can be paid under its control. (*Vide also exparte Loveday*, 8 *Eng. Law and Eq.*, 235.)

As it is doubtless, therefore, in the power and within the discretion of the court to give costs in those cases to the parties prosecuting the commission if there is a traverse before the appointment of the committe, if a committee is ultimately appointed, "the proceeding being regarded," as Lord ELDON said in the case *exparte Sherwood*, "as for the benefit of the lunatic;" so it must be within the jurisdiction of the court to allow the committee the costs incurred by them in opposing the traverse after the appointment of the committee.

In this view of the power of the court, I am clearly of the opinion that these accounts of the committee ought to be allowed and paid out the fund in their hands. This proceeding, I think, was commenced and conducted with entire good faith.

From the papers presented to the court on their applica-

tion, it appears that the original commission was executed by three reputable commissioners, one a counsellor of experience and standing in this court, and another a distinguished physician of the county.

The jury consisted of twenty qualified freeholders from the vicinity of the alleged lunatic. And the commission was executed in the vicinity of his residence. He appeared by attorney and contested the proceeding. More than twenty witnesses were sworn, and the proceedings occupied a whole day and until midnight, and the whole jury signed the inquisition.

From a paper exhibited on this motion it also appears that the original proceeding of suing out such commission, had the approval and concurrence of the children of the said Jacob Clapp, consisting of nine adult children, and the husbands of two of his daughters, most of whom attended the trial, and approved of the action of the committee. And it also appears that the inquisition was confirmed, and the committee appointed upon due notice to the said Jacob Clapp and was unopposed at the time.

Under such circumstances, I cannot doubt that the proceeding was instituted and conducted with entire good faith, and although the three referees who finally tried the issue of traverse, found in favor of the soundness of mind of the alleged lunatic, and of his capability of managing his own affairs, I cannot but think that the decision of the twenty jurors from the immediate neighborhood of the alleged lunatic, finding the inquisition, under the charge and direction of the three commissioners who supervised the trial, upon the careful trial had before them, is entitled to about as much reliance as the report of the referees; at least it vindicates the good faith of the parties instituting the proceeding, and of the committee in opposing the traverse before the referees of the issue tried by them.

Proceedings of this kind ought not, in my opinion, to be looked upon by the court with disfavor, for my observa-

tion and experience leads me to the belief that they are very rarely instituted by the members of the family of an alleged lunatic or habitual drunkard, except in cases where they are highly justifiable and meritorious.

But it is further objected that the power of the court to direct the allowance of the costs and expenses incurred by the committee in opposing the traverse of the inquisition, if it existed before, ceased when the order of February 27th, 1860, was made, confirming the report of the referees who tried that issue, and superseding the commission and inquisition, and the appointment of the committee. *I think this cannot be so.* The court referred it to a referee in that order to adjust and settle the accounts of the committee, and must necessarily retain jurisdiction in the proceeding, and of the fund in their hands until the coming in of the final report of the referee, and the confirmation of such report.

The referee is acting under the authority of the court, and the proceeding for the adjustment of the accounts of the committee is incidental to the jurisdiction acquired and exercised over the property of the alleged lunatic. Until the accounts of the committee are closed, and the fund directed to be handed over to the alleged lunatic, they, and the funds in their hands, remain necessarily under the control of the court. The court must protect its officers acting under its authority in such case and must possess all the requisite authority and jurisdiction for that purpose.

*The* just and proper expense of the committee incurred in the progress of this proceeding from the time they came into possession of the property of the alleged lunatic under the appointment of the court, ought to be paid from the funds in their hands, and should be allowed to them under the direction of the court.

It may, therefore, be referred back to the referee, to allow in the settlement of the accounts of the committee, the taxed bills of the attorneys of the committee, and all other

expenses justly and properly incurred, and paid by them in the discharge of their duty on such traverse, including a reasonable counsel fee to their counsel upon the trial of the issue of traverse before the said referees, before whom the same was tried, and all other disbursements for witness fees, and otherwise justly and properly incurred and paid by them in such proceedings, upon proper proof thereof.

And the committee may give proof of the items disallowed for deficiency of proof before the court referred to in the exceptions taken by the committee to the report of the said referee above mentioned, if the proof thereof was not before given before said referee. Neither party to have costs upon the said exceptions, or upon this motion.