WARD, J.
On April 20, 1894, the petition of George Lofthouse was presented, by his attorneys, to the special term of the supreme court, praying for a commission de lunático inquirendo to inquire into the lunacy of his father, Thomas Lofthouse. The court at special term appointed G. II. Ray as special guardian for the said Thomas Lofthouse, to attend to his interest in the proceeding under a commission, which was granted, and appointed E. W. Hamm, Esq., a commissioner to execute the writ. A jury was summoned, and on the 22d day of June, 1894 after several days’ session, in a proceeding in which the alleged lunatic appeared by counsel, and in which the attorneys for the petitioner and the said guardian also appeared, they found that the said Thomas Lofthouse was of unsound mind, and incapable of governing himself or managing his property. The inquisition was returned, and filed with the county clerk; and, on the 18th day of July, Thomas Lofthouse died, there having been no confirmation of the finding of the jury and appointment of committee prior to such death. Thomas Lofthouse left a will, in which he appointed an executor. The will was duly admitted to probate, and the executor duly qualified and entered upon the duties of his trust. On the 30th day of January, 1895, the special term of the supreme court, upon petition duly presented to *469 the court, and upon notice to the executor, and upon affidavits presented in support of the claims, and in opposition thereto, adjusted the claim of C. H. Ray as special guardian at the sum of $74.50, and Commissioner E. W. Hamm, his fees in the sum of $80, and a further sum of $27.25 for expenses and disbursements of the said commissioner in the proceeding, and allowed the petitioners, for their counsel fees, costs, and disbursements in the said proceeding, the sum of $176.50, and directed that the foregoing sums he allowed and payable out of the estate of Thomas Lofthouse, deceased, the alleged lunatic. The executor, upon said motion, through his counsel, objected to these items, and to the allowance thereof, and denied the power of the court to allow and adjust the same. The appeal from the order making such allowance brings the matter before us.
It is now insisted by the counsel for the appellant that the court had no jurisdiction of the matter upon which it acted; that its jurisdiction in the premises ceased upon the death of Thomas Lofthouse, at which time the lunacy proceedings were at an end; that, after his death, the inquisition could not be confirmed, nor the claims allowed, and it is only where the inquisition is confirmed and a committee appointed that the courts can allow costs and disbursements of a petitioner in lunacy proceedings, under section 2336 of the Code of Civil Procedure; that it was error for the court to thus adjudicate upon those claims, and allow them; that, if the claims had any validity, they should have been presented to executor as a debt against the deceased, to be adjusted and allowed, if at all, upon the same principle that other debts are presented and allowed against the estate of a deceased person.
There seems to he no objection to the amount of the claims allowed, or the justice of such claims, if they are allowable at all. 'These claims arise in special proceedings, instituted under sections 2320—2340, inclusive, of the Code of Civil Procedure, and being title 6 of chapter 17 of that Code, authorizing the appointment of a committee of the person and property of lunatics, etc., and defining its general powers aud duties. The codifiers of this Code say, in referring to this chapter, “that they have carefully endeavored to avoid inserting statutory restrictions upon the courts, tending to deprive them of any part of the large discretion now vested in them, which it is necessary to preserve for the benefit of the unfortunate individuals to whom this title applies.”1 The care and custody of lunatics and persons of unsound mind were formerly vested in the chancellor; hut, by the constitution of 1846 and the judiciary act supplementing it, this power became vested in the supreme court and in the county courts of the several counties as to persons residing in those counties, concurrent with the supreme court; so that the original chancery jurisdiction vesting in this court upon this subject has not been circumscribed .or limited by the Code; the chapter referred to providing the procedure to he adopted in appointing the committee, and defining its 'duties, rather than defining the jurisdiction of the court over the *470 person, and property of a lunatic. By section 2333 of the Code, the commissioner is entitled to such compensation for his services as the court directs. The jurors are entitled to the same compensation as jurors upon the trial of an issue in an action in the same court. The petitioner must pay the compensation of the commissioner, sheriff, and jurors. These expenses accrued before the death of the alleged lunatic, and a duty is expressly imposed upon the court to allow them. It is provided by section 2336 of the Code: “Where a committee of the property is appointed, the court must direct the payment by him out of funds in his hands of the necessary disbursements of the petitioner and such a sum for his costs and counsel fees as he thinks reasonable.” The disbursements of the petitioner for his costs and counsel fees and the fees of the special guardian bad been earned, so to speak, by the counsel for the petitioner and the special guardian prior to the death of Lofthouse. Ho committee had been appointed. Hone could be apponted after such death, but the lunacy of Thomas Lofthouse had, in fact, been declared and established by a jury prior to that time, and these costs and expenses had been incurred in a proceeding in good faith to establish such lunacy. The precise question here is whether the claimants for the allowances made by the court have been deprived of their right to enforce them, by the death of Thomas Lofthouse. We do not think that those claims are debts against the estate of Thomas Lofthouse in any such sense as to be enforced and collected in the ordinary manner that debts against a deceased are collected, because the claims did not become perfected, and the property of the lunatic not liable therefore, until the court has fixed the amount of the claims, and ordered them to be paid. That was done in this instance. When they are so allowed and ordered paid, they become such an obligation against the property of the deceased that the executor will be authorized to pay them. In Re Clapp, 20 How. Prac. 385, 388, 389, it was held that if, upon the execution of the commission of lunacy, it had been found that the alleged lunatic was of sound mind, then the court would have acquired no control over his property, and could not have charged the costs of the proceeding upon his property, as in that case it would have found no property under its control out of which the costs might be paid; but after a jury had passed upon the question, and found the alleged lunatic of unsound mind, the court, upon confirming the inquisition, acquires complete jurisdiction over the lunatic and his property,-—citing In re Giles, 11 Paige, 638; 1 Collin. Ln. 461; In re Arnhout, 1 Paige, 501.
We are of the opinion that the moment these proceedings, which terminated, so far as they had gone, successfully, had been instituted, the court obtained such jurisdiction over the property of the alleged lunatic as, 'by virtue of its general powers in such cases, it could provide for the payment of the costs of the proceedings out of such property. The report of the inauisitiou was not formally confirmed in this case, but it was sanctioned by *471 the court as far as it was necessary to give vitality to these claims, and to that extent was a confirmation of the inquisition. Further proceedings, such as the appointment of a committee, were rendered impossible by the death of Thomas Lofthouse; but such death did not deprive the court of the power of allowing those claims, and directing their payment. Section 2336 is imperative: Where a committee is appointed, “the court must direct the payment by him, out of the funds in his hands,” of the costs and disbursements. The Code contains no prohibition upon the court, either in language or by inference, against allowing costs and expenses under circumstances like those in the case before us. The ordinary course of such proceedings results in the appointment of a committee, who is an officer of the court, and takes possession of the property of the lunatic; and in that event the committee must be directed to pay the costs, etc.; but in this case the court, by virue of its inherent powers, having secured substantial control of the lunatic’s property, may lawfully make the order appealed from.
The order should be affimed, with ten dollars costs and disbursements.
All concur.