### In re BRAYER.

(Monroe County Court. April 20, 1899).

1. INSANE PERSONS—ACCOUNTING BY COMMITTEE—COUNSEL FEES.

    The committee of an insane person, who has been compelled to institute proceedings to compel an accounting by a prior committee, where the latter was removed by order of court, and imprisoned for contempt for refusing to file his account and vouchers, and the disputed claims amounted to $13,000, and there were no accurate books, will be allowed counsel fees out of the estate.

2. SAME—RIGHTS OF EXPECTANT HEIRS AND NEXT OF KIN.

    The fact that an insane person is confined in an asylum, suffering from incurable paresis, does not prevent his committee from compelling his former committee to make a full accounting, without first obtaining the consent of expectant heirs and next of kin, as it is the benefit and comfort of the incompetent that the committee must hold first in mind.

3. SAME—MISCONDUCT OF COMMITTEE.

    Where the committee of an insane person has brought a proceeding to compel his former committee to account, and after the death of the incompetent his executrix has been substituted, and a decree settling the

account and discharging the former committee has been made, the expenses incurred by the committee in such proceeding may be charged to the estate, and not to the former committee, though they were necessitated by his misconduct.

**4. SAME—COMPENSATION OF COMMITTEE—EXTRA ALLOWANCE.**

Where the commissions of a committee of an insane person are inadequate, in view of the services rendered, the court may allow an additional amount, under Code Civ. Proc. § 2338, providing that he shall receive the same commissions as an executor, but that additional compensation, in a special case where his services exceed those of an executor, may be allowed.

Judicial settlement of the accounts of John F. Brayer, as the committee of Joshua E. Lovecraft, an incompetent person, now deceased.

James G. Greene, for John F. Brayer, committee.
Horace McGuire, for Alice D. Lovecraft, as executrix.

SUTHERLAND, J. The questions to be determined by the court in this proceeding arise out of the claim made by John F. Brayer, the accounting committee, for an allowance out of the estate of the deceased incompetent person for counsel fees and expenses incurred in a contest over the account of George E. Lovecraft, a former committee, who was removed from his office by the court, Mr. Brayer being appointed in his place. Pending the litigation over the account of George E. Lovecraft as committee, the incompetent person died, leaving a will, which was probated, and Alice D. Lovecraft, the widow of the incompetent, as executrix, was substituted in the proceeding, as representative of the estate of the incompetent, in place of Brayer, as committee, George E. Lovecraft filing a new account, new objections being filed thereto by the executrix; and such proceedings were thereupon had that the contest instituted by Brayer, as committee, over the account, was terminated, the objections filed by the executrix being allowed by George E. Lovecraft, and a decree entered, by consent of George E. Lovecraft and the widow as executrix, in which it was determined and adjudged that George E. Lovecraft was not indebted to the estate of his ward in any sum whatever. The decree further discharged the sureties upon the bond of George E. Lovecraft, and ordered the discharge of record of certain mortgages which he had given upon his individual real estate to John F. Brayer, as committee, to secure any sum which, upon a final accounting, might be found due from him to the estate of his ward. That decree stated that it was without prejudice to John F. Brayer, as committee, upon his own accounting, to ask for an allowance for expenses incurred in said litigation. At the time the final decree was entered discharging George E. Lovecraft as committee, John F. Brayer, as committee, had filed his account in this court, in which he asked for an allowance for his expenses incurred in the litigation against George E. Lovecraft before the death of the incompetent person. The only persons interested in the estate of Joshua E. Lovecraft are Alice D. Lovecraft, his executrix and widow, and

George E. Lovecraft, his only son and heir at law. The property consists, in the main, of real estate in the city of Rochester, and certain heading-mill property in Rochester, Olean, and Salamanca. Mr. Brayer, as committee, has made payments in excess of his actual receipts of money in the sum of $256.07, and has received no compensation whatever as committee, and he has no money to pay his counsel or the referee for their services in the litigation between him and George E. Lovecraft over the accounts of the latter. The amount in controversy before the referee arising upon the objections of Mr. Brayer to the account presented by George E. Lovecraft was something like $13,000; the former committee insisting that his father's estate was indebted to him in about $5,000, and his successor, Mr. Brayer, claiming that he was indebted to the estate of his father to the amount of $7,000 or $8,000. The hearing before the referee occupied 48 days. I have looked into the papers and proceedings far enough to become satisfied that the contest was instituted and carried on in good faith by Mr. Brayer, and the length of the contest was made necessary by the wretched condition in which the accounts of his predecessor had been kept. George E. Lovecraft filed no inventory upon his appointment. The books, in which were kept the transactions showing the condition of his father's business and his own transactions, had disappeared before Mr. Brayer assumed charge. An expert accountant, employed by Mr. Brayer to examine into such fragments of books and papers as were left, reported to him that the interest of Joshua E. Lovecraft in the personal property, at the time George E. Lovecraft assumed charge as committee, amounted to over $24,000. After George E. Lovecraft was removed as committee, a peremptory order was made for him to file his accounts and vouchers with this court, which order was not obeyed, and George E. Lovecraft was put into jail for contempt of court, and, in order to obtain his release from incarceration, George E. Lovecraft gave mortgages upon his own real estate to secure the payment of any sum which might be adjudged due from him to the estate of his father. Under these conditions, it was plainly the duty of Mr. Brayer, as committee, to pursue the former committee with the aid of skilled counsel, to ascertain the extent of the estate of his ward, and to compel the deposed committee to restore whatever he had withheld.

It is now suggested that, as the only heirs and next of kin of the incompetent person were Alice D. Lovecraft and George E. Lovecraft, Mr. Brayer should not have engaged in so expensive a contest without the express approval of Alice D. Lovecraft, and that, as the incompetent person was at that time in the state hospital suffering from paresis, so much litigation was not necessary nor prudent; but I do not think it would be a safe rule to lay down that, when a lunatic has incurable paresis, the committee should go according to the instructions of the expectant heirs and next of kin. It is the benefit and comfort of the incompetent person which the committee must hold first in mind. In Dormer's Case, 2 P. Wms. 263, the lord chancellor, Macclesfield, says: "Though he has been so long in this un-

happy condition, yet a lunatic, in the eyes of the law, is never looked upon to be desperate, but always, at least, in a possibility of recovering. It is his benefit and comfort I am to take care of where no creditor complains, and not to heap up wealth for the benefit of his administrators or next of kin." The evidence had been practically closed when Mr. Lovecraft died. What the result would have been had the contest not been ended by his death, we do not know. It is sufficient that the committee had reasonable cause for pursuing the judicial investigation to its sudden termination.

The referee's fees incurred upon the 48 hearings amount to $720. The unpaid bill for counsel fees incurred by Mr. Brayer is $1,743.92. It is conceded that the referee's fees are reasonable, and that the services of counsel are well worth the amount named, but it is urged that much of the expense was attributable to the negligence and official misconduct of George E. Lovecraft, and should be borne by him alone. I think George E. Lovecraft's failure properly to perform his duties as committee has occasioned most of this expense, and if the case had proceeded in the lifetime of the incompetent, and the referee had rendered his report, it may be that George E. Lovecraft would have been charged personally with the costs of the accounting. But the time for charging George E. Lovecraft personally has gone by. The final decree in his accounting, which was granted and entered by consent of the executrix, discharged him absolutely and released his bondsmen. On the entry of that decree, the executrix represented the estate of the incompetent, and not Mr. Brayer, whose power as committee ceased upon the death of his incompetent.

The commissions of Mr. Brayer amount only to $61.88. This is wholly inadequate to compensate him for the extraordinary services which he has necessarily rendered. An allowance of $200 as additional compensation, under section 2338 of the Code, is granted.

An order may be made, following the practice in Re Forkel, 8 App. Div. 397, 40 N. Y. Supp. 847, in Re Lofthouse, 3 App. Div. 139, 38 N. Y. Supp. 39, and Kowing v. Moran, 5 Dem. Sur. 56, adjudging that these items for referee's fees, counsel fees, and for the advancements made by Mr. Brayer as committee, and for his commissions and the expenses of this accounting, constitute a just and rightful debt and claim against the estate of Joshua E. Lovecraft, to the same extent as if said indebtedness had been contracted by the incompetent in his lifetime, the order to be settled on two days' notice.