OPINION OF THE COURT
Lewis R. Friedman, J.
Petitioner seeks to have this court set the amount of legal fees she may obtain from the estate of Dana Morrison. Pursuant to article 77 of the Mental Hygiene Law, petitioner sought *658 the appointment of a conservator for her niece Ms. Dana Morrison. The application was granted, after a hearing; however, Ms. Morrison died before entry of the order. The issue, which has not been decided in the reported cases, is whether this court, as opposed to Surrogate’s Court, has the power under Mental Hygiene Law § 77.07 (d) to set a legal fee for a petitioner where the proposed conservatee dies after the hearing but before an order is entered.
Petitioner proposed Stephen Harnik, an attorney for whom Ms. Morrison had worked as a secretary, as conservator. Jerome Wold, Ms. Morrison’s brother, opposed the petition. It was undisputed that Ms. Morrison’s mental condition had deteriorated to the extent that a conservator was necessary. At the hearing the essence of the opposition, however, was that Mr. Wold sought his own appointment as conservator. This court, in an oral decision, granted the application, but withheld determination of the identity of the conservator until the entry of the order which was to be settled. Ms. Morrison died two days after the hearing and decision. In an order, settled on notice to all parties, the court denied the proceeding as moot, set the fee of the guardian ad litem, provided that the fee be paid by the estate of the proposed conservatee, and directed that the claim be presented to the Surrogate’s Court in the probate proceeding.
Petitioner now argues that Mental Hygiene Law § 77.07 (d) permits this court to award a fee to a successful petitioner’s attorney. The statute, in pertinent part, provides: "When the petition is granted, the court may award reasonable counsel fees to the attorney for the petitioner and a reasonable allowance to a guardian ad litem appointed to represent the proposed conservatee payable out of the funds of the conservatee. * * * When the proposed conservatee dies before the determination of the proceeding, the court may award a reasonable allowance to a guardian ad litem appointed to represent the proposed conservatee, payable by the petitioner, or by the estate of the decedent, or by both in such proportions as the court may deem just.” Petitioner contends that the petition had been "granted”; objector disagrees.
An analysis of the history of Mental Hygiene Law § 77.07 (d) establishes that the Legislature intended Supreme Court to award fees to a petitioner only upon the entry of the order finally determining the petition. The current statute has its origins in proceedings for the appointment of committees for incompetents. The long-established rule in those cases was *659 that the special proceeding for appointment of a committee terminated upon the death of the proposed incompetent. Therefore, unless a committee had already been appointed, Supreme Court lacked power to fix any fees and expenses to be paid from the estate (see, Matter of Frank, 283 NY 106, 110; Finch v Goldstein, 245 NY 300, 303; Carter v Beckwith, 128 NY 312, 322; Matter of Posner, 24 AD2d 967; cf., Sengstack v Sengstack, 4 NY2d 502, 510). Those cases followed the older English principle, that unless there is a fund within the control of the court there is no jurisdiction to invade the assets of the proposed incompetent (see, Ex Parte Ferne, 5 Ves Jun 832, 31 Eng Rep 882 [Ch 1801]). That rule gained early acceptance in the United States (Ordronaux, Commentaries on the Lunacy Laws of New York and on the Judicial Law of Insanity [1878]; Buswell, Law of Insanity [1885]; Hughes v Jones, 116 NY 67, 74-77). The English common-law rule, which was not always followed (Sherwood v Sanderson, 19 Ves Jun 280, 287, 34 Eng Rep 521, 524 [Ch 1815]), was finally changed by statute in 1862 (25 & 26 Vic, ch 86, § 11). New York had little statutory law on the subject (e.g., L 1788, ch XII; L 1801, ch 30; L 1847, ch 280; 1 Rev Laws of 1813, ch XXX, at 147; 2 Rev Stat, part II, ch V, tit II [1st ed]), but generally followed early English common-law procedures (see, Matter of Clapp, 20 How Prac 385 [1861]; Hughes v Jones, supra; Matter of McGuinness, 290 NY 117, 128; Matter of Klein, 34 Misc 2d 621; In re Stern, 114 NYS2d 17, 18).
Two apparently contrary decisions permitted the award of fees by Supreme Court. In Matter of Lofthouse (3 App Div 139) the executor of the estate had appeared generally in the incompetency proceeding and the court found that there was sufficient jurisdiction to award fees. In Matter of Ferris (86 App Div 559, affd 176 NY 607) the court ordered the executor to be joined as a party so that fees could be fixed. The courts have continually declined to follow Lofthouse and Ferris and order the joinder of an estate fiduciary in Supreme Court (see, Matter of Donovan, 64 Misc 2d 163, 165; Matter of Klein, supra, 34 Misc 2d, at 622; Matter of Callahan, 280 App Div 771).
As part of its study of the incompetency law, the Law Revision Commission recommended that the Frank case (supra) be overruled by statute. It proposed that the then relevant statute, Mental Hygiene Law former § 101 (9), be amended to provide that a guardian ad litem and the attorney for petitioner be paid when a petition is granted and that *660 when the alleged incompetent dies before the termination of the proceeding, the guardian may be paid out of the estate (1966 Report of NY Law Rev Commn [1966 NY Legis Doc No. 65 (J)], at 445-447). An exhaustive study prepared on the subject for the Commission supported the need for legislative reform. However, it did not recommend increasing the right of the attorney for the petitioner to be paid from the estate when the alleged incompetent died before termination of the proceedings (id., at 451-499). The Law Revision Commission’s proposal was adopted (L 1966, ch 448) and was ultimately codified in Mental Hygiene Law § 78.03 (h). Under the language of that section, "there is no authority to award either a fee or costs and disbursements to the petitioner where death intervenes prior to confirmation and the appointment of a committee” (Matter of Donovan, supra, 64 Misc 2d, at 166-167).
The statute governing conservators, as adopted in 1972, had originated from the 1960 extensive study by the Special Committee to Study Commitment Procedures of the Association of the Bar of the City of New York which was followed by similar reports of the Law Revision Commission (see, 1966 Report of NY Law Rev Commn [1966 NY Legis Doc No. 65 (G)], at 263; 1967 Report of NY Law Rev Commn [1967 NY Legis Doc No. 65 (G)], at 209 et seq.). There is now a clear legislative preference for the appointment of a conservator rather than a committee (Mental Hygiene Law § 78.02). A conservatorship imposes a substantially lower burden on the rights of the conservatee. Yet, even when reviewing the statutory authority for the award of costs and fees in conservatorship proceedings, the Court of Appeals has held that legislative intent must be carefully scrutinized and followed. Thus, in Matter of Green (Potter) (51 NY2d 627), the court refused to include the costs and disbursement provisions of Mental Hygiene Law § 78.03 (h), applicable to incompetency proceedings, in conservatorship proceedings under Mental Hygiene Law article 77, since there was no comparable section in that article. The careful study by the Legislature before adopting article 77 showed that the omission was intentional; therefore, the courts were precluded from making such awards. The Legislature responded to Matter of Green by enacting the current provisions of Mental Hygiene Law § 77.07 (d); they are essentially identical to those in section 78.03 (h) (2) (L 1981, ch 69; see, mem of City of New York, *661 1981 NY Legis Ann, at 60). There is nothing in the legislative history that suggests that anyone sought to expand the statute to provide for fees to be paid to petitioners’ attorneys in the event of death before appointment (Bill Jacket, L 1981, ch 69).
The Legislature’s omission of provisions calling for the payment of petitioner’s attorneys’ fees, when the proposed eonservatee or incompetent dies before an order is entered, is clearly intentional and, no doubt, the result of a carefully developed decision concerning the distribution of responsibilities between the Surrogate’s Court and Supreme Court. As demonstrated at pages 658-659 (supra), long-established authority has held that this court never acquired jurisdiction over the assets or affairs of the proposed conservatee prior to death. The Surrogate’s Court clearly has that jurisdiction now (SCPA 201-204). The "history of the Surrogate’s Court during the twentieth century is one of steadily expanding jurisdiction” (Matter of Piccione, 57 NY2d 278, 287). Literal and expansive construction of the powers of the Surrogate has been endorsed because " '[concentration of jurisdiction as to decedents’ estates’ (per Foley, S., in Matter of Haigh [125 Misc 365, 368]) is the purpose clearly revealed in the statutory scheme” (Matter of Raymond v Davis, 248 NY 67, 72 [Cardozo, Ch. J.]). The Legislature could well conclude that the award of fees should be left to the Surrogate’s Court under these circumstances. That court may determine the extent to which services performed by a petitioner’s attorney were essential to protect and preserve the property of the alleged conservatee. If the Surrogate’s Court concludes that the services were beneficial to the deceased, it may, of course, award those fees during its proceedings (In re Stern, supra; Matter of Klein, supra, 34 Misc 2d, at 624; Matter of Donovan, supra, 64 Misc 2d, at 167).
The Court of Appeals has held that "it would be counterproductive to interpret [a statute] as to intend the fragmentation of the treatment of the affairs of a decedent’s estate” (Matter of Piccione, supra, 57 NY2d, at 290-291). This court declines to find that the Legislature in Mental Hygiene Law § 77.07 (d) intended to create that fragmentation.
Obviously, in the absence of a final order of appointment, the court had not "granted” the petition here prior to death. Thus, the Supreme Court lacks power to grant the relief sought.